# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 1. Notice of Appeal from a Judgment or Order of a
### United States District Court

Name of U.S. District Court: | Northern District of California

U.S. District Court case number: | 18-cv-07671-EMC

Date case was first filed in U.S. District Court: | 12/21/2018

Date of judgment or order you are appealing: | 06/28/2019

Fee paid for appeal? *(appeal fees are paid at the U.S. District Court)*

⦿ Yes  ○ No  ○ IFP was granted by U.S. District Court

**List all Appellants** *(List each party filing the appeal. Do not use "et al." or other abbreviations.)*

Fisk Electric Company

Is this a cross-appeal? ○ Yes  ⦿ No

If Yes, what is the first appeal case number?

Was there a previous appeal in this case?  ○ Yes  ⦿ No

If Yes, what is the prior appeal case number?

Your mailing address:

Nida & Romyn, P.C.

8383 Wilshire Boulevard, Suite 810

City: | Beverly Hills  State: | CA  Zip Code: | 90211

Prisoner Inmate or A Number (if applicable):

**Signature** | *[signature]* | **Date** | 7/18/19

*Complete and file with the attached representation statement in the U.S. District Court*

Feedback or questions about this form? Email us at *forms@ca9.uscourts.gov*

**Form 1** | *Rev. 12/01/2018*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 6. Representation Statement

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List each party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:

Fisk Electric Company

Name(s) of counsel (if any):

Robert Nida, Esq.
David C. Romyn, Esq.

Address: 8383 Wilshire Boulevard, Suite 810

Telephone number(s): (310) 286-3400

Email(s): rnida@nidaromyn.com; dromyn@nidaromyn.com

Is counsel registered for Electronic Filing in the 9th Circuit?  ⦿ Yes  ○ No

---

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:

Webcor Construction L.P.
Obayashi Corporation

Name(s) of counsel (if any):

Bennett J. Lee, Esq.
Garrett E. Dillon, Esq.
Stephen L. Pessagno, Esq.

Address: 333 Bush Street, Suite 1500

Telephone number(s): (415) 623-7000

Email(s): blee@vlmglaw.com; gdillon@vlmglaw.com; spessagno@vlmglaw.com

*To list additional parties and/or counsel, use next page.*

Feedback or questions about this form? Email us at *forms@ca9.uscourts.gov*

**Form 6**                    *1*                    *New 12/01/2018*

Continued list of parties and counsel: *(attach additional pages as necessary)*

## **Appellants**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Is counsel registered for Electronic Filing in the 9th Circuit?   ○ Yes   ○ No

## **Appellees**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 6**                    *2*                    *New 12/01/2018*

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FISK ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>OBAYASHI CORPORATION, et al.,<br><br>Defendants. | Case No. 18-cv-07671-EMC<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION TO STAY; AND FINDING**<br>**PLAINTIFF'S MOTION TO STRIKE,**<br>**DISMISS, OR STAY MOOT**<br><br>Docket Nos. 60, 68 |

Plaintiff Fisk Electric Company ("Fisk") has filed suit against multiple defendants, including the Webcor/Obayashi Joint Venture ("WOJV"); Webcor Construction L.P.[1]; and Obayashi Corporation. The main claim between Fisk and these defendants – hereinafter collectively referred to as the WOJV Defendants – is breach of contract. The WOJV has filed counterclaims against Fisk and further asserted a third-party complaint.

Currently pending before the Court are two motions: (1) the WOJV Defendants' motion to stay and (2) Fisk's motion to strike, dismiss, or stay the WOJV's third-party complaint. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** the WOJV Defendants' motion and, as a result, finds Fisk's motion moot.

///

///

---

[1] Fisk actually sued Webcor Builders, Inc. but the parties have now agreed that this was an error and the proper name of the Webcor entity is Webcor Construction L.P. *See* Docket No. 60 (Mot. at 1); (Docket No. 67) (Opp'n at 2 n.1).

## I.   FACTUAL & PROCEDURAL BACKGROUND

A.   Operative Pleadings

In the operative second amended complaint ("SAC"), Fisk alleges as follows.

In March 2009, the Transbay Joint Powers Authority ("TJPA") and the WOJV entered into a written contract – hereinafter referred to as the "Prime Contract" – related to the construction of the Transbay Transit Center Project. *See* SAC ¶ 14.  In the Prime Contract, the TJPA and the WOJV agreed that the latter would provide certain pre-construction services, serve as the construction manager/general contractor, and manage/administer subcontracts with trade subcontractors. *See* SAC ¶ 14.

In November 2014, the WOJV and Fisk entered into a written contract – hereinafter referred to as the "Subcontract" – under which "Fisk agreed to furnish labor, materials, and equipment required by the Prime Contract for the [Transbay Transit Center] Project's Electrical, Communications, Security and Integrated Networks." SAC ¶ 20; *see also* FAC, Ex. B (Subcontract).  Fisk would be paid nearly $87 million for its work under the Subcontract. *See* SAC ¶ 20; *see also* SAC, Ex. B (Subcontract § 3) (listing contract price).  The Subcontract also provided for additional compensation should there be "extra work and added cost required due to changes in the scope, conditions, or requirements for performance of the Subcontract work, and for delays, disruption, and acceleration of the work of Fisk and its subcontractors and suppliers." SAC ¶ 23.

According to Fisk, ultimately, it did perform extra work because, *e.g.*, the WOJV made changes to the work and interfered with Fisk's work, and because changes in conditions were discovered, all of which "changed the nature of scope of the work and services required in the . . . Subcontract." SAC ¶ 24.  Fisk alleges that it has not been compensated for the extra work.  In addition, it has not been compensated for some of the work required under the original terms of the Subcontract.  Altogether, Fisk claims it is owed at least $60 million. *See* SAC ¶¶ 25-26. According to Fisk, the WOJV has breached the Subcontract by failing to pay. *See* FAC ¶ 27.  Fisk also claims additional breaches of the Subcontract – *e.g.*, "failing to complete precedent work necessary to allow Fisk to timely perform its scope of work," "improperly de-scoping portions of

the . . . Subcontract and assigning said work to other contractors in violation of California law," and "[a]sserting arbitrary and groundless offset claims against Fisk." SAC ¶ 27.

In the SAC, Fisk asserts multiple causes of action against the WOJV Defendants[2]:

(1) Breach of contract (*i.e.*, the Subcontract).

(2) Recovery on "stop payment notice" release bond.

(3) Violation of prompt-payment statute.

(4) Recovery on payment bond.

In response to Fisk's SAC, the WOJV has asserted (1) a third-party complaint against the TJPA and (2) counterclaims against Fisk. In the third-party complaint against the TJPA, the WOJV alleges that the "TJPA was unable to fulfill its key contractual duties including making the critical decisions required to keep the Project on time and on budget." Docket No. 63 (3d-Party Compl. ¶ 10). In its counterclaim, the WOJV takes notes of allegations made by the TJPA in other litigation that the "WOJV and its Trade Subcontractors, including Fisk, failed, in various respects, to properly provide certain work, services, materials, or equipment, as applicable in connection with the Project work." Docket No. 64 (Countercl. ¶ 18). "[The] WOJV denies [the] TJPA's allegations and any liability to [the] TJPA"; however, "if it is determined that [the] TJPA is entitled to any recovery against [the] WOJV in this action, it will be due, in whole or in part, to the acts or omissions of [Fisk]." Docket No. 64 (Countercl. ¶ 20). The WOJV's counterclaims against Fisk include claims for breach of contract and express indemnity.

B.   Related State Court Litigation

The instant case is not the only case related to the construction of the Transbay Transit Center Project. There are also four state court actions, namely:

(1) The Pacific Action (No. CGC-18-564434).

(2) The Skanska Action (No. CGC-18-566431).

(3) The WOJV Action (No. CGC-18-570621).

(4) The Desert Action (No. CGC-19-573549).

---

[2] Some of the claims have also been asserted against the remaining defendants (*i.e.*, the issuers of bonds).

United States District Court
Northern District of California

1    The first, second, and fourth lawsuits were all brought by subcontractors on the Project

2    against, *inter alia*, the WOJV. *See also* Dillon Decl. ¶ 3 (testifying that the WOJV subcontracted

3    with various companies "to perform certain work on the project to construct the Transbay Transit

4    Center Building and related structures"). The subcontractors' claims against the WOJV include,

5    *e.g.*, claims based on bonds and claims for breach of contract. In the Skanska Action, the WOJV

6    responded by asserting cross-claims against the TJPA. *See* Dillon Decl., Ex. E (cross-claims).

7    The TJPA in turn asserted claims against the WOJV and, in turn, the WOJV brought in additional

8    parties – namely, subcontractors such as Fisk. *See* Dillon Decl., Ex. G (second amended cross-

9    claims). According to the WOJV, although it "denies [the] TJPA's allegations and any liability to

10   [the] TJPA, if it is determined that [the] TJPA is entitled to any recovery against [the] WOJV in

11   this action, it will be due, in whole or in part, to the acts or omissions of the Trade Subcontractor

12   . . . ." Dillon Decl., Ex. G (SACC ¶ 118).

13   In the third action, the WOJV sued the TJPA for, *inter alia*, breach of contract. According

14   to the WOJV, the "TJPA was unable to fulfill its key contractual duties including making the

15   critical decisions required to keep the Project on time and on budget." Dillon Decl., Ex. A

16   (Compl. ¶ 10). The TJPA countered with a cross-complaint against the WOJV, alleging, *inter*

17   alia, that subcontractors, including but not limited to Fisk, fell "substantially behind in their

18   work." Dillon Decl., Ex. B (Cross-Compl. ¶ 87); *see also* Docket No. 60 (Mot. at 6) (noting that

19   the TJPA specifically names Fisk as responsible for project delays, inefficiencies and extra costs")

20   (emphasis omitted). After the TJPA filed its cross-complaint, the WOJV filed its own cross-

21   complaint, more specifically, against its subcontractors, including Fisk. According to the WOJV,

22   although it "denies the allegations in TJPA's FACC, to the extent those allegations are proven to

23   be true, [the] WOJV contends that any liability that it incurs to [the] TJPA would be caused, in

24   whole or in part, by the alleged failures of the Trade Subcontractor Cross-Defendants to perform

25   . . . ." Dillion Decl., Ex. C (Cross-Compl. ¶ 40).

26   The WOJV Action has now been consolidated with the Skanska and Pacific Actions, and it

27   is likely that the Desert Action will also be consolidated. According to the state court,

28   consolidation was appropriate because "[a]ll three cases regard disputes over the project's

construction costs" and so "adjudicating common interests in one court department would be more efficient than having three departments consider overlapping facts and risk inconsistent findings." As of date, although Fisk is a party in some of the state court actions, it has not filed any affirmative claims itself. The only affirmative claims brought by Fisk are before the instant Court.

## II.   WOJV DEFENDANTS' MOTION TO STAY

In their pending motion, the WOJV Defendants ask that the Court stay the instant case so that the related state court litigation (now consolidated) can be completed first. The state court litigation covers claims by the TJPA that place blame on the WOJV and/or its subcontractors, claims by the WOJV that place blame on the TJPA and subcontractors, and claims by subcontractors that place blame on the WOJV and/or the TJPA.[3] The instant case covers the same territory, although there is a particular focus on Fisk given that it initiated the action.

A.   *Weiner*

As an initial matter, the Court must address what kind of stay the WOJV Defendants are seeking. Although, in their papers, the WOJV Defendants have made reference to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), as well as *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)), they clarify in their reply brief that they are only asking for a stay pursuant to a Ninth Circuit decision, *Weiner v. Shearson, Hamill & Co.*, 521 F.2d 817 (9th Cir. 1975).

Because the WOJV Defendants are predicating their motion on *Weiner*, a brief discussion of the case is appropriate. In *Weiner*, the plaintiff was an individual investor. He filed an action in federal court against his stockbroker (a company), alleging that it "had mishandled the sale and purchase of certain shares in [his] account in such a way as to violate the federal securities laws." *Weiner*, 521 F.2d at 818. Several months earlier, however, the plaintiff had filed a suit in state court. In the original state court complaint, he claimed that the stockbroker had breached the brokerage agreement. Subsequently, the plaintiff amended the state court complaint,

---

[3] As noted above, Fisk does not have any affirmative claims in the state court actions. However, as a defendant, it seems more than likely that it will still seek to place blame on the WOJV and/or the TJPA. Fisk has not made any real argument to the contrary.

"transform[ing] the action from one based on breach of contract to one based on violations of the federal securities laws." *Id.* at 819. On the same day that the plaintiff filed his amended state court complaint, he filed the federal lawsuit – "a virtually identical complaint." *Id.*

The district court granted the stockbroker's motion to dismiss the federal complaint. On appeal, the Ninth Circuit began by noting that the case before it fell into

> the class of cases . . . in which the parties are seeking to litigate the same or closely related claims in two forums simultaneously. *The state courts have long recognized that in such situations, the later filed action may be abated.* A variety of considerations have been cited in support of such abatement: the friction created by the appearance that the second court is interfering with the first; the waste of judicial resources caused by litigation in two courts; the unnecessary burden placed on already overcrowded dockets; the dual burden placed on litigants; and the possibility that dual litigation might involve the courts in an unseemly race to judgment.

*Id.* at 820 (emphasis added).

The Ninth Circuit then noted that

> [t]he federal courts have had some difficulty in incorporating the abatement doctrine into their practice. Where two federal district courts are involved, there has been little trouble in finding a discretionary power to abate the second action. . . . Since in such cases the litigants are not deprived of a federal forum, the considerations of judicial economy and interference with orderly administrative procedure have proved paramount.

*Id.* at 820-21 (citing, *inter alia*, *Landis*). In contrast, where one action is in state court and the other action in federal court, "there has been some reluctance to recognize a broad power to stay the federal action under all circumstances." *Id.* at 821. In particular, when the federal action is one "at law, a few courts still have felt constrained by the old pronouncements that a federal court would be derelict in its duty if it 'practically abandoned its jurisdiction.'" *Id.*

The Ninth Circuit, however, found that "such statements have no application to cases involving abatement." *Id.* The court added that,

> even if abatement were proper in this case, dismissal of the action [the relief granted by the trial court] was not the appropriate method. Instead, the district court should have stayed the action pending either the outcome of the state action or a timely suggestion by either party that the reasons which had prompted the stay had ceased to apply.

1    *Id.*

2         The Ninth Circuit ultimately remanded the case to the district court so that it could decide

3    in the first instance whether a stay was warranted. *See id.* at 822.

4    B.     Abatement

5         According to the WOJV Defendants, *Weiner* provides that a stay may be issued pursuant to

6    an "abatement" doctrine. *See* Reply at 2.  But the WOJV Defendants seem to be misreading

7    *Weiner* – or at least what is meant by "abatement."

8         It appears that, historically, "abatement" was a term used when certain relief was being

9    sought in equitable proceedings (as opposed to actions at law).  *See Herrington v. Cty. of Sonoma*,

10   706 F.2d 938, 939-40 (9th Cir. 1983) (discussing the *Colorado River* doctrine and stating that any

11   "[r]eliance on *Weiner* . . . was misplaced [because] *Weiner* speaks of 'abatement' of the federal

12   court proceedings *in equitable actions* when there is a prior action in state court") (emphasis

13   added); *cf. Baer v. Fahnestock & Co.*, 565 F.2d 261, 263 (3d Cir. 1977) (noting that the term

14   "abatement" is somewhat ambiguous in meaning: "in equity, an abatement was an interruption or

15   suspension of a suit, the equivalent of a stay of proceedings," whereas, "at common law, an

16   abatement was an overthrow of a suit, the equivalent of a dismissal"; adding that "[t]he modern

17   trend is to treat an abatement as a request for a stay of proceedings, foregoing the risk to the

18   parties inherent in an outright dismissal").  As for the relief being sought, abatement generally

19   involved a stay or possibly a dismissal.

20        The abatement doctrine thus bears a striking similarity to the *Colorado River* doctrine.

21   That is, both abatement and *Colorado River* come into play when there are parallel proceedings in

22   state and federal court; also, the remedy under both abatement and *Colorado River* is a stay or a

23   dismissal.  *Cf. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983)

24   (stating that, although "[w]e have no occasion in this case to decide whether a dismissal or a stay

25   should ordinarily be the preferred course of action when a district court properly finds that

26   *Colorado River* counsels in favor of deferring to a parallel state-court suit[,] . . . a stay is as much a

27   refusal to exercise federal jurisdiction as a dismissal"; "the decision to invoke *Colorado River*

28   necessarily contemplates that the federal court will have nothing further to do in resolving any

United States District Court
Northern District of California

7

United States District Court
Northern District of California

1   substantive part of the case, whether it stays or dismisses").

2       Given these similarities, the question is whether the abatement doctrine still survives as an

3   independent basis for a stay, or whether it has been supplanted by the *Colorado River* doctrine.

4   *Weiner* was decided approximately a year before *Colorado River* issued.

5       Although *Weiner* does not appear to have been expressly overruled, the Ninth Circuit

6   seems to have implicitly held such – or at least generally endorsed application of *Colorado River*

7   over *Weiner* when there are parallel proceedings in state and federal court. *See, e.g., Am. Int'l*

8   *Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1259 (9th Cir. 1988) (applying

9   *Colorado River*; discussing *Weiner* only in the context of plaintiff's argument that "abstention

10  should not be allowed in this case because of the probable inadequacy of state court

11  proceedings"); *Herrington*, 706 F.2d at 939-40 (applying *Colorado River* and not *Weiner*; noting

12  that any "[r]eliance on *Weiner* . . . was misplaced" because "*Weiner* speaks of 'abatement' of the

13  federal court proceedings in equitable actions when there is a prior action in state court").

14      The WOJV Defendants argue that *Weiner* still has viability because it was cited by the

15  Supreme Court in a decision that post-dated *Colorado River* – *i.e.*, in *Will v. Calvert Fire*

16  *Insurance Co.*, 437 U.S. 655 (1978). But it is difficult to say that the Supreme Court actually

17  endorsed *Weiner* and/or the abatement doctrine in *Will*, given that *Weiner* was mentioned only in

18  passing in a footnote. *See id.* at 559 n.1 (noting that the federal plaintiff – the defendant in the

19  parallel state proceeding – asked for equitable relief in the federal complaint that was identical to

20  an allegation in state pleading that it was entitled to rescission; citing *Weiner* in support).

21      Moreover, the Supreme Court has underscored that its decision in *Will* did not in any way

22  undermine *Colorado River*. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S.

23  1, 16, 18 (1983) (finding no merit to hospital's argument that "*Colorado River*'s exceptional-

24  circumstances test . . . was undermined by our subsequent decision in *Will*"; adding that *Will* was

25  ultimately about the right standard for issuance of a writ of mandamus).

26      Whether *Colorado River* rather than *Weiner* applies in the context of the instant case is not

27  clear. *See Montgomery v. Practice Mgmt. Assocs., Inc.*, No. C89-3411 DLJ, 1990 U.S. Dist.

28  LEXIS 7731, at *6 (N.D. Cal. Apr. 5, 1990) (indicating that *Colorado River* overruled *Weiner*). In

8

United States District Court
Northern District of California

1   any event, for the reasons discussed below, even under the more demanding *Colorado River*

2   standard, a stay is appropriate here.

3   C.   *Colorado River*

4        The Ninth Circuit has explained the *Colorado River* doctrine as follows:

> Generally "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . ." The Supreme Court has emphasized that the federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," including in cases involving parallel state litigation. "Abdication of the obligation to decide cases can be justified . . . only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." Under "exceedingly rare" circumstances, "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," may counsel in favor of abstention.
>
> *Colorado River* and its progeny provide a multi-pronged test for determining whether "exceptional circumstances" exist warranting federal abstention from concurrent federal and state proceedings. We evaluate eight factors in assessing the appropriateness of a *Colorado River* stay or dismissal:
>
> > (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state  court proceedings will resolve all issues before the federal court.
>
> These factors are not a "mechanical checklist"; indeed, some may not have any applicability to a case. Rather, as instructed by the Supreme Court, we examine them in "a pragmatic, flexible manner with a view to the realities of the case at hand." Moreover, we must carefully balance the important factors, "with the balance heavily weighted in favor of the exercise of jurisdiction." The underlying principle guiding this review is a strong presumption against federal abstention: "[O]ur task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the surrender of that jurisdiction." "Any doubt as to whether a factor exists should be resolved against a stay, not in favor of one."

9

*Seneca Ins. Co. v. Strange Land, Inc.*, 862 F.3d 835, 841-42 (9th Cir. 2017) (emphasis in original).

The Ninth Circuit has indicated that the factors above that are related to judicial efficiency are not enough *by themselves* to justify a *Colorado River* stay.  In *Seneca*, the court explained:

> The reasons that the district court offered to justify abstention – that the parallel proceedings will involve piecemeal disposition of the issues, that state law provides the rule of decision, and that the state proceeding is better suited to promote resolution of all the issues among the parties – are likely to be present in nearly every instance of concurrent state and federal suits where state law provides the rule of decision.  These concerns "do not create the 'exceptional circumstances' required for *Colorado River* deference because they are present to this degree in many instances of parallel federal-state litigation."

*Id.* at 847; *see also id.* at 843 (stating that "[t]he district court misconstrued the piecemeal litigation factor because it failed to identify any special concern counseling in favor of federal abstention, such as [in *Colorado River*] a 'clear federal policy' of avoiding 'piecemeal adjudication[ of water rights' expressed via federal legislation 'recogniz[ing] the availability of comprehensive state systems for adjudication of water rights'").  Furthermore, in *Colorado River*, the Supreme Court noted that "the mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise staying exercise of federal jurisdiction."  *Colorado River*, 424 U.S. at 816.

Recognizing this Court's virtually unflagging obligation to exercise its jurisdiction, and the accompanying strong presumption against federal abstention, the Court nonetheless concludes that a *Colorado River* stay is appropriate in the instant case.  Many of the eight factors above weigh strongly in favor of a stay.  First, the desire to avoid piecemeal litigation has extraordinary application to the instant case.  The case at bar and the consolidated state court proceedings are *not* the typical proceedings that involve two parallel cases in state and federal courts concerning the same transaction or event (such as where there are parallel state and federal civil rights claims concerning an incident involving the same parties).  Rather, the case at bar – consisting of Fisk's claim against the WOJV Defendants and the WOJV counterclaim and third-party claims against the TJPA – is but one piece of a much larger, more complicated dispute involving a large number of parties implicated in a large web of claims, counterclaims, and crossclaims, all of which are

10

United States District Court
Northern District of California

1    pending in a consolidated state court proceeding.  As the Court noted at the hearing, allowing this

2    case to proceed in tandem with the consolidated state court proceedings would be tantamount to

3    permitting the tail to wag a very large dog.

4           In addition, the merits of all these claims, both before this Court and the state court, will be

5    decided based on state law, not federal law, and nothing suggests that the consolidated state court

6    proceedings cannot adequately protect Fisk's rights.  The state court will be in a unique position to

7    resolve *all* claims which are interwoven in a highly complex way.  Furthermore, contrary to what

8    Fisk argues, the order in which the forums obtained jurisdiction does not clearly weigh in its favor.

9    Although Fisk is correct that, technically, it filed its federal action before the WOJV asserted

10   claims against Fisk in the state court proceedings, the WOJV brought the WOJV Action against

11   the TJPA two months earlier and it was that action which triggered the WOJV's cross-claim

12   against Fisk.  (The WOJV filed a cross-claim against Fisk after the TJPA filed its cross-claim

13   against the WOJV wherein the TJPA places blame on subcontractors including Fisk.)

14          Although *Colorado River* applies only in exceedingly rare circumstances, this is one of

15   those rare situations where considerations of wise judicial administration, giving regard to

16   conservation of judicial resources and comprehensive disposition of litigation – factors (3), (5),

17   (6), and (8) in particular –favors in a compelling way issuance of a stay.

18   **III.    FISK'S MOTION TO STRIKE, DISMISS, OR STAY**

19          Because the Court is granting Defendants' motion to stay the instant case in its entirety,

20   Fisk's motion to dismiss or stay only the WOJV's third-party complaint against the TJPA is moot.

21          To the extent Fisk is asking for relief different from a stay or dismissal – *i.e.*, a striking of

22   the third-party complaint pursuant to Federal Rule of Civil Procedure 14 – the request is not well

23   founded.  Rule 14(a)(4) does provide: "Any party may move to strike the third-party claim, to

24   sever it, or to try it separately." Fed. R. Civ. P. 14(a)(4).  However, the 1963 Advisory Committee

25   notes for the rule indicate that, "[a]fter the third-party defendant is brought in, the court has

26   discretion to strike the third-party claim if it is obviously unmeritorious *and* can only delay or

27   prejudice the disposition of the plaintiff's claim, or to sever the third-party claim or accord it

28   separate trial if confusion or prejudice would otherwise result." Fed. R. Civ. P. 14, 1963 Advisory

Committee Notes (emphasis added).  Here, the WOJV's claims against the TJPA are not "obviously unmeritorious," even if their adjudication might delay Fisk's claims against the WOJV.

## IV.   CONCLUSION

For the foregoing reasons, the Court grants the WOJV Defendants' motion to stay and finds Fisk's motion moot.

The Clerk of the Court shall immediately stay proceedings in the instant case pending resolution of the consolidated proceedings in state court.  If, however, the state court refuses to entertain the claims asserted against Fisk or refuses to entertain any claims Fisk decides to assert against the WOJV, Fisk may petition this Court for relief from the stay.

This order disposes of Docket Nos. 60 and 68.

**IT IS SO ORDERED**.

Dated: June 28, 2019

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California

12

1

## PROOF OF SERVICE

2  **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3         At the time of service, I was over 18 years of age and not a party to this action.  I am employed
in the County of Los Angeles, State of California.  My business address is 8383 Wilshire Boulevard,
4  Suite 810, Beverly Hills, CA 90211-2425.

5         On July 18, 2019, I served true copies of the following document(s) described as **NOTICE OF
APPEAL FROM A JUDGMENT OR ORDER OF A UNITED STATES DISTRICT COURT
6  AND REPRESENTATION OF STATEMENT** on the interested parties in this action as follows:

7      Bennett J. Lee
       Garrett E. Dillon
8      Stephen L. Pessagno
       VARELA, LEE, METZ & GUARINO, LLP
9      333 Bush Street, Suite 1500
       San Francisco, CA 94104
10     Tel:  (415) 623-7000
       Fax:  (415) 623-7001
11     blee@vlmglaw.com
       gdillon@vlmglaw.com
12     spessagno@vlmglaw.com

13     Attorneys for Defendants

14         **BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s)
with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered
15  CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered
CM/ECF users will be served by mail or by other means permitted by the court rules.
16
17         I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct and that I am employed in the office of a member of the bar of this Court
at whose direction the service was made.
18
19     Executed on July 18, 2019, at Beverly Hills, California.

20
                                              /s/ Dorla Wise
21                                            Dorla Wise

22

23

24

25

26

27

28

NIDA & ROMYN, P.C.
A PROFESSIONAL LAW CORPORATION
www.nidaromyn.com
(310) 286-3400

6.9-5
PROOF OF SERVICE-Notice
of Appeal 7.18.19

PROOF OF SERVICE – [PROPOSED ORDER – MOTION TO DISMISS]