UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FISK ELECTRIC COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>OBAYASHI CORPORATION, et al.,<br><br>    Defendants. | Case No. 18-cv-07671-EMC<br><br>**ORDER DENYING WOJV'S MOTION TO STAY, AND GRANTING TJPA'S MOTION TO DISMISS**<br><br>Docket Nos. 97, 99 |

The instant case concerns disputes related to the construction of the Transbay Transit Center ( "Transbay Project" or "Project"). In March 2009, the Transbay Joint Powers Authority ("TJPA") entered into a Prime Contract with the Webcor/Obayashi Joint Venture ("WOJV"), under which WOJV agreed to perform certain preconstruction services, serve as the construction manager/general contractor, and manage and administrator subcontracts with trade subcontractors who would construct Phase 1 of the Project. Subsequently, in November 2014, WOJV and Fisk Electric Company ("Fisk") entered into a Subcontract under which Fisk agreed to perform certain electrical subcontract work for the Project.

Fisk initiated the instant case in December 2018, suing WOJV, the joint venture members (two companies), and sureties. WOJV responded with counterclaims against Fisk and also filed a third-party complaint against the TJPA.

Currently pending before the Court are two motions: (1) WOJV's motion to stay this case[1] and (2) the TJPA's motion to dismiss, strike, or stay WOJV's third-party complaint. Having

---

[1] The motion to stay was formally filed by both WOJV and its members. For convenience, the Court refers to only WOJV in this order.

considered the parties' briefs and accompanying submissions, as well as all other evidence of record, the Court hereby **DENIES** WOJV's motion to stay and **GRANTS** the TJPA's motion to dismiss.

## I. WOJV'S MOTION TO STAY

The pending motion is WOJV's second attempt to stay proceedings in this case based on related proceedings in state court. The state court litigation began before this case – specifically, in October 2018, when WOJV filed suit against the TJPA for, *inter alia*, breach of contract (hereinafter, the "Lead State Action"). In the Lead State Action, WOJV accused the TJPA of being responsible for Project delay and cost overruns and improperly trying to pass on responsibility for such to WOJV and its subcontractors. *See* Docket No. 60-1 (Dillon Decl., Ex. A) (WOJV Compl. ¶ 9). The TJPA responded with a cross-complaint against WOJV, placing blame on WOJV and its subcontractors, including but not limited to Fisk. *See* Docket No. 60-1 (Dillon Decl., Ex. B) (TJPA Cross-Compl. ¶¶ 88-94). Thereafter, WOJV filed a cross-complaint against Fisk and other subcontractors. *See* Docket No. 60-1 (Dillon Decl., Ex. C) (WOJV Cross-Compl.). Fisk then filed a cross-complaint against, *inter alia*, WOJV. (Fisk's cross-complaint appears to be largely duplicative of the instant action.)

In addition to the Lead State Action, there are five other state lawsuits that are related to the Project and that have been consolidated with the Lead State Action (collectively, "Consolidated State Action"). This includes lawsuits brought against WOJV by other subcontractors.

Based on the overlap with the consolidated state court litigation, the Court granted WOJV's first motion to stay, citing the *Colorado River* doctrine. The Ninth Circuit reversed and vacated the *Colorado River* stay. WOJV now has filed a second motion to stay, this time invoking different grounds as bases to stay. In the motion, WOJV makes two arguments: (1) the case should be stayed pursuant to the *Landis* doctrine and (2) the case should be stayed because the Subcontract contemplates that a dispute between the contractor and subcontractor that also implicates the project owner "would be part of a single action against [the project owner]." Reply at 5.

2

The Court rejects both arguments. As to the *Landis* doctrine, *see Landis v. North American Co.*, 299 U.S. 248 (1936), it applies only where the parallel case is another federal district court case. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976) (citing *Landis* in support of the statement that, "[a]s between federal district courts, . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation"); *Ambrosia Coal & Constr. Co. v. Morales*, 368 F.3d 1320, 1328 (11th Cir. 2004) (noting that the general principle to avoid duplicative litigation, which applies when there are multiple federal district court cases, "does not apply . . . when the duplicative litigation arises between state and federal courts"). When the parallel case is a state court action, as here, a stay may be granted pursuant to the *Colorado River* doctrine only. *See AIIRAM LLC v. KB Home*, No. 19-CV-00269-LHK, 2019 U.S. Dist. LEXIS 136744, at *16-17 (N.D. Cal. Aug. 12, 2019) (rejecting the argument that *Landis* provides a basis for a stay when a *Colorado River* stay is not merited; noting that *Colorado River* would otherwise be undermined). In the instant case, the Ninth Circuit has rejected application of the *Colorado River* doctrine.[2]

As for WOJV's second argument – *i.e.*, that the Subcontract contemplates a dispute between WOJV and Fisk that also implicates the project owner (*i.e.*, the TJPA) must be resolved in a single action – it also lacks merit. Section 13.02 of the Prime Contract, which is incorporated by reference into the Subcontract – is simply a venue provision. It does not address or mandate consolidated proceedings. Other provisions likewise make no reference to or otherwise suggest consolidated proceedings. *See, e.g.*, Subcontract § 4.1.4 ("In the event the Owner fails, neglects or refuses to pay the Contractor for any reasons whatsoever (except on account of defaults solely attributable to the Subcontractor), Contractor and Subcontractor agree to pursue their rights to payment from the Owner."); Subcontract § 5.2 ("In the event that Contractor prosecutes a claim against the Owner for additional compensation for any delay, Subcontractor shall cooperate fully with Contractor in the prosecution thereof . . . ."). To the extent WOJV has placed special

---

[2] Although WOJV has cited *Patel v. City of L.A.*, 594 F. App'x 415, 416 (9th Cir. 2015), in support of its argument for a *Landis* stay, that case is not dispositive. In addition to the fact that *Patel* is not binding precedent, the reference to a *Landis* stay in *Patel* was *dicta* and therefore is not binding on this Court.

1   emphasis on § 5.2, the Court notes that Fisk is fully capable of cooperating with WOJV in

2   litigation between WOJV and the TJPA without formally becoming a party to that litigation as

3   well.

4       Accordingly, for the reasons stated above, the Court denies WOJV's second motion to stay

5   proceedings.

## II.     TJPA'S MOTION TO DISMISS, STRIKE, OR STAY

7       The TJPA has filed a motion to dismiss, strike, or stay with respect to the third-party

8   complaint ("3PC") that the WOJV has asserted against it.  The TJPA's primary argument is that

9   the Court should decline to exercise supplemental jurisdiction over the 3PC.

10       To assess the TJPA's argument, the Court must first bear in mind the scope of: (1) the

11   allegations in Fisk's complaint against WOJV and (2) the allegations in WOJV's 3PC against the

12   TJPA.  As to Fisk's complaint against WOJV, Fisk charges WOJV with violating the terms of the

13   contract between the two companies (*i.e.*, the Subcontract).  According to Fisk, the Subcontract

14   provided that Fisk would receive additional compensation "for extra work and added cost required

15   due to changes in the scope, conditions or requirements for performance of the Subcontract work,

16   and for delays, disruptions, and acceleration of the work of Fisk and its subcontractors and

17   suppliers." SAC ¶ 23.  Fisk maintains that WOJV breached the Subcontract by, *inter alia*, causing

18   delay, making changes in scope, and disrupting Fisk's work and then failing to pay Fisk for the

19   extra work necessitated by WOJV's conduct.  *See* SAC ¶ 27.

20       In its 3PC against the TJPA, WOJV asserts that the TJPA breached the contract between

21   the two companies (*i.e.*, the Prime Contract) and that the TJPA has an obligation to indemnify

22   WOJV should WOJV be held liable to others, including subcontractors.  The 3PC is not limited to

23   the work performed by subcontractor Fisk but encompasses work done on the entire Project.

24   WOJV broadly alleges that the TJPA caused delay in the Project – *e.g.*, the TJPA's Design Team

25   made errors and omissions in the Contract Documents; WOJV had to issue over 12,000 Requests

26   for Information ("RFIs") because of the errors and omissions in the Project design; the TJPA

27   failed to timely respond to more than 25% of the RFIs; WOJV had to issue over 1,600 Change

28   Order Requests ("CORs"), many to correct the design errors and omissions; and the TJPA failed

4

to timely resolve many CORs. *See* 3PC ¶¶ 34-35, 49-50. WOJV also alleges that the TJPA failed to extend the Contract Time (claiming that unavoidable delays should have anticipated or were a result of required WOJV coordination activities); failed to increase the contract price when WOJV accelerated work at the TJPA's direction; and failed to issue Contract Change Orders in response to legitimate CORs (and, by doing so, failed to adjust the Contract Work Price where WOJV was contractually entitled to additional compensation); and failed to increase the Contract Price for numerous substantiated subcontractor claims. *See* TPC ¶¶ 35, 55, 58, 66, 83.

Not surprisingly, the TJPA has argued that the Court should decline supplemental jurisdiction over WOJV's 3PC because its scope is far broader than Fisk's complaint. *See* 28 U.S.C. § 1367(c)(2), (4) (providing that a court may decline to exercise supplemental jurisdiction over a claim if it "substantially predominates over the claim or claims over which the district court has original jurisdiction" or if, "in exceptional circumstances, there are other compelling reasons for declining jurisdiction").[3] TJPA also asserts that, if the 3PC is allowed to proceed, it will have to file counterclaims and cross-claims, thus triggering wide-ranging litigation effectively duplicative of the Consolidated State Action.

A.   Rule 19

In response, WOJV contends that the Court cannot decline supplemental jurisdiction because the TJPA is a necessary party under Federal Rule of Civil Procedure 19. Underlying WOJV's argument that the TJPA is a necessary party is WOJV's contention that the TJPA is the only entity that can be held liable for design errors or omissions that impacted Fisk's performance. *See* Opp'n at 4 (asserting that, "[u]nder the Prime Contract and applicable California law, TJPA (not WOJV) ultimately will be held responsible for any design errors or omissions that impacted Fisk's performance"). But even if the Court assumes that the TJPA is the only entity that can be held liable for design errors omissions – and further assumes that design errors or omissions were largely responsible for Fisk's damages in the instant case – the TJPA still is not a necessary party.

---

[3] For purposes of this order, the Court need not address whether declination of supplemental jurisdiction is warranted on other grounds such as § 1367(c)(1) (*i.e.*, because "the claim raises a novel or complex issue of State law").

Under Rule 19,

> [a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord *complete relief* among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise *inconsistent obligations* because of the interest.

Fed. R. Civ. P. 19(a)(1) (emphasis added). According to WOJV, the TJPA is a necessary party under the "complete relief" and "inconsistent obligations" provisions. Both arguments lack merit.

WOJV asserts that, absent, the TJPA, "this Court would not be able 'accord complete relief' among the remaining parties in this action . . . [because] TJPA, not WOJV, bears liability for damages arising from insufficient plans and specifications." Opp'n at 7. But most courts have construed the "complete relief" provision in Rule 19(a)(1) narrowly – *i.e.*, joinder is required where

> nonjoinder precludes the court from effecting relief not in some overall sense, but between *extant parties*. In other words, joinder is required only when the absentee's nonjoinder precludes the court form rendering complete justice *among those already joined*. . . . Properly interpreted, the Rule is not invoked simply because some absentee may cause future litigation. The effect of a decision in the present case on the absent party is immaterial under the "complete relief" clause. The fact that the absentee might later frustrate the outcome of the litigation does not by itself make the absentee necessary for complete relief. The "complete relief" clause does not contemplate other potential defendants, or other possible remedies.

Moore's Fed. Prac. – Civ. § 19.03[2][b][ii] (emphasis in original). *See, e.g.*, *Eldredge v. Carpenters 46 N. Cal. Ctys. Joint Apprenticeship & Training Comm.*, 662 F.2d 534, 537 (9th Cir. 1981) (stating that the part of Rule 19 related to complete relief "is concerned only with relief as between the persons already parties, not as between a party and the absent person whose joinder is sought'"); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. New York*, 762 F.2d 205, 209 (2d Cir. 1985)

6

1  (stating that "the term complete relief refers only 'to relief as between the persons already parties,
2  and not as between a party and the absent person whose joinder is sought'").
3  WOJV argues still that the TJPA is a necessary party under the "inconsistent obligations"
4  provision. WOJV maintains: "TJPA must be joined to this action or WOJV could be prejudiced
5  by judgments in two separate courts [one state, one federal] that could leave it in the position of
6  losing in both cases due to conflicting determinations [regarding liability for incomplete plans and
7  specifications]." Opp'n at 7. In other words, WOJV could be held liable to Fisk in the instant
8  case for damages resulting from incomplete plans and specifications, but then still lose to the
9  TJPA in the state court proceedings for damages resulting from incomplete plans and
10  specifications.
11  The problem with this argument is that – as the TJPA points out – the Ninth Circuit has
12  distinguished between "inconsistent obligations" (the phrase used in Rule 19(a)(1)(B)) and
13  "inconsistent adjudications." According to the Ninth Circuit,

> "'[i]nconsistent obligations' are not . . . the same as inconsistent adjudications or results. Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident. Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum."

18  *Cachil Dehe Band of Wintun Indians v. Cal.*, 547 F.3d 962, 976 (9th Cir. 2008) (quoting *Delgado*
19  *v. Plaza Las Ams.*, 139 F.3d 1, 3 (1st Cir. 1998)); *see also* Moore's § 19.03[3][d] (stating that "[i]t
20  is important to note that the 'multiple liability' clause compels joinder of an absentee to avoid
21  inconsistent *obligations*, and not to avoid inconsistent adjudications") (emphasis in original).
22  Accordingly, "the possibility that, in the absence of a joint tortfeasor, a defendant may be
23  liable in the original action and lose a subsequent action for contribution against the joint
24  tortfeasor is not the kind of inconsistency contemplated by the 'multiple liability' clause."
25  Moore's § 19.03[3][d]; *see also id.* § 19.03[3][e] (noting that joinder is required where nonjoinder
26  of the absentee "threatens a party with the risk of paying double or multiple obligations" – but "the
27  possibility that, in the absence of a joint tortfeasor, a defendant may be liable in the original action
28  and lose a subsequent action for contribution against the tortfeasor is not the kind of double

7

liability contemplated by the 'multiple liability clause"). Here, there is no risk of multiple liability for WOJV with respect to Fisk's claims. *See also Nottingham v. Gen. Am. Commc'ns Corp.*, 811 F.2d 873, 880-81 (5th Cir. 1987) (stating that "Rule 19 does not require the joinder of joint tortfeasors" and does not require joinder of persons against whom Ross and GAC have a claim for contribution[;] [t]hus, whether Rumpf be a joint tortfeasor . . . or contributor to the award, Rumpf was not an indispensible [sic] party to this case"); *SASCO v. Byers*, No. C 08-5641 JF (RS), 2009 U.S. Dist. LEXIS 36886, at *7 (N.D. Cal. Apr. 14, 2009) (stating that "a defendant's possible right of reimbursement, indemnity, or contribution against an absent party is not sufficient to make the absent party indispensable to the litigation").

Moreover, "potential contributors and indemnitors are not necessary precisely because impleader [under Federal Rule of Civil Procedure 14] . . . protects the defendant." Moore's § 19.03[3][e]. *See, e.g.*, *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 412 (3d Cir. 1993) (stating that, "[t]hough federal civil practice . . . permits a party defendant who claims a right of contribution or indemnity from third persons to protect itself from potentially inconsistent verdicts by impleading the absent party under Federal Rule of Civil Procedure 14, it is not required to do so; and, if it does not, its right to bring a separate action for contribution or indemnity is unaffected"); *cf. Delgado*, 139 F.3d at 3 (stating that, "where two suits arising from the same incident involve *different causes of action*, defendants are not faced with the potential for double liability because separate suits have different consequences and different measures of damages") (emphasis added).

B.  Supplemental Claim Substantially Predominates

Because the TJPA is not a necessary party, the Court now turns to the TJPA's contention that the Court should decline to exercise supplemental jurisdiction over the WOJV's 3PC. Section 1367(c)(2) provides that a court may decline supplemental jurisdiction where the supplemental claim "substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). Section 1367(c)(2) can apply whether the basis of original jurisdiction is federal question jurisdiction *or* diversity jurisdiction (as here). *See Allstate Interiors & Exteriors, Inc. v. Stonestreet Constr., LLC*, 730 F.3d 67, 74 (1st Cir. 2013) (although

8

1   holding that supplemental claims did not clearly predominate over claims over which there was
2   diversity jurisdiction); *Korrow v. Aaron's Inc.*, No. 10-6317 (MAS) (LHG), 2015 U.S. Dist.
3   LEXIS 160032, at *9 (D.N.J. Nov. 30, 2015) (stating that "district courts in this Circuit, as well as
4   the First Circuit and district courts in other Circuits, have found that § 1367(c)(2) is applicable to
5   diversity cases").

6   In the case at bar, the Court agrees with the TJPA that WOJV's 3PC against it substantially
7   predominates over Fisk's complaint against WOJV. As is clear from the description of the
8   pleadings above, the 3PC is much broader in scope than Fisk's complaint; in effect, Fisk's
9   complaint against WOJV is but one piece of a much larger dispute that involves the TJPA, WOJV,
10  and many subcontractors, including but not limited to Fisk. *See, e.g.*, 3PC ¶ 81 *et seq.* (alleging
11  that WOJV has received pass-through claims from Trade Subcontractors, including but not limited
12  to Fisk for which TJPA is liable; adding that "[m]ore Trade Subcontractor Claims are expected
13  going forward"). As noted above, the 3PC concerns the larger dispute encompassing the entire
14  Project and is not limited to matters which pertain to Fisk's work. Its breadth promises to
15  replicate that of the Consolidated State Action. *Cf. Borough of W. Mifflin v. Lancaster*, 45 F.3d
16  780, 789 (3d Cir. 1995) (stating that "§ 1367(c)(2)'s authority should be invoked only where there
17  is an important countervailing interest to be served by relegating state claims to the state court[;]
18  [t]his will normally be the case only where 'a state claim constitutes the real body of a case, to
19  which the federal claim is only an appendage' – only where permitting litigation of all claims in
20  the district court can accurately be described as allowing a federal tail to wag what is in substance
21  a state dog").

22  Although WOJV has cited some authority in support of its position – in particular, *William*
23  *A. Gross Construction Associates v. American Manufacturers Mutual Insurance Co.*, 2009 U.S.
24  Dist. LEXIS 21818 (S.D.N.Y. Feb. 23, 2009) (report and recommendation) – the Court does not
25  find that authority persuasive. There, the court suggested that declining supplemental jurisdiction
26  was not appropriate because of concerns it had about inconsistent judgments. *See id.* at *69-70.
27  But inconsistent judgments is not a § 1367(c)(2) concern. Furthermore, *Gross* is distinguishable
28  from the instant case in that here, unlike *Gross*, there is already a state court action that covers the

9

entirety of the dispute among the relevant players. *See id.* at *70-71.

The other case cited by WOJV is distinguishable for a similar reason – *i.e.*, there, the entirety of the dispute would be in the federal proceeding because the plaintiff intended to amend its original complaint. *See CCC Ins. Co. v. Brooklyn Hosp. Ctr.*, No. 03 Civ. 3093 (TPG), 2004 U.S. Dist. LEXIS 9657 (S.D.N.Y. May 27, 2004) (stating that, "[w]hile it is clear that the original complaint's allegations regarding the loan are only a small part of the larger controversy between the parties, this does not mean that defendant's potential third-party claims 'predominate' over the issues raised by plaintiffs[;] [p]laintiffs have properly invoked this Court's diversity of citizenship jurisdiction with a substantial claim against defendant, and *their proposed amended complaint would bring before this Court the full breadth of the dispute between the parties*") (emphasis added). Here, Fisk does not intend to amend its complaint to bring in the larger controversy before the Court. The 3PC goes far beyond what Fisk placed in controversy.

Accordingly, the Court concludes that, based on § 1367(c)(2), it is appropriate to decline supplemental jurisdiction.

C.     Exceptional Circumstances

Although § 1367(c)(2) alone provides a basis for the Court to decline supplemental jurisdiction, the Court briefly addresses § 1367(c)(4) as it provides an independent basis for the Court's ruling. In so ruling, the Court acknowledges that "declining jurisdiction outside of subsection (c)(1)-(3) should be the exception, rather than the rule. Courts therefore must ensure that the reasons identified as 'compelling' are not deployed in circumstances that threaten this principle." *Exec. Software N. Am. v. United States Dist. Court*, 24 F.3d 1545, 1558 (9th Cir. 1994). Nevertheless,

> [c]ourts have found that there are exceptional circumstances justifying a decision to decline to exercise supplemental jurisdiction under § 1367(c)(4) where litigation of state claims in the federal forum would create jury confusion because the state and federal claims rely on different legal theories, *Padilla v. City of Saginaw*, 867 F. Supp. 1309 (E.D. Mich. 1994), where adjudication of the state claims would disrupt the adjudication of the primary claim, *Carlucci v. United States*, 793 F. Supp. 482, 485-86 (S.D.N.Y. 1992) (finding that exceptional circumstances existed where granting jurisdiction over the third party state claims "would interfere with the efficient collection of the taxes owed on behalf of

10

> the Davenport employees because it would simply prolong and complicate the proceedings"), *and where the claims raised in parallel state and federal actions are duplicative and the exercise of federal jurisdiction would frustrate judicial economy. Hays County Guardian v. Supple*, 969 F.2d. 111 (5th Cir. 1992), *cert. denied*, 506 U.S. 1087, 122 L. Ed. 2d 371, 113 S. Ct. 1067 (1993) [finding exceptional circumstances and compelling reasons because "[a]djudicating state-law claims in federal court while identical claims are pending in state court would be a pointless waste of judicial resources"]. *See also Philip Morris Inc. v. Heinrich*, 1998 U.S. Dist. LEXIS 4695, No. 95-0328 (S.D.N.Y. 1998) (declining to extend supplemental jurisdiction over third-party plaintiff's claim pursuant to § 1367(c)(4) where there was "another action in existence in a New Jersey state court, addressing the same claims as those alleged in Besen's [third-party plaintiff] third-party complaint.").

*SST Glob. Tech., LLC v. Chapman*, 270 F. Supp. 2d 444, 459-60 (S.D.N.Y. 2003) (emphasis added); *see also Phillip Morris Inc. v. Heinrich*, No. 95 Civ. 0328, 1998 U.S. Dist. LEXIS 3258, at *5-6 (S.D.N.Y. March 19, 1998) (noting that one compelling reason to decline exercising supplemental jurisdiction was existence of pending state court action "addressing the same claims as those alleged in [the] proposed third-party complaint"); *Polaris Pool Sys. v. Letro Prods., Inc.*, 161 F.R.D. 422, 425 (C.D. Cal. 1995) (stating that a "pending state court action probably constitutes exceptional circumstances"). *Compare Kennedy v. United States*, No. 3:18-02940-MGL, 2020 U.S. Dist. LEXIS 70969, at *6 (D.S.C. Apr. 22, 2020) (holding that there were no exceptional circumstances to justify declination of supplemental jurisdiction; noting, *inter alia*, that "Moving Defendants would not be required to defend this action on two fronts [because] Kennedy has agreed to stay the state-court action during the pendency of the federal action [–] [t]he dormant state-court action merely protects her legal interests if the Court declines to exercise supplemental jurisdiction should it dismiss the federal claims").

In the instant case, the exercise of federal jurisdiction over the 3PC specifically would frustrate judicial economy because the 3PC covers the entire breadth of the work done on the Project, which is already at issue in the Consolidated State Action. Thus, there are exceptional circumstances warranting declination of supplemental jurisdiction. The Court's ruling here is not contrary to the Ninth Circuit's rejection of a *Colorado River* dismissal or stay in this case for two reasons. First, the issues of whether to decline supplemental jurisdiction and whether to abstain under *Colorado River* are two distinct inquiries, even though there may be some analytical overlap

11

at times. *See, e.g.*, *San Diego Police Officers' Ass'n v. Aguirre*, No. 05-CV-1581 H (POR), 2007 U.S. Dist. LEXIS 112716, at *21-27 (S.D. Cal. June 26, 2007) (after dismissing federal claims, declining to exercise supplemental jurisdiction over remaining state law claims; alternatively, dismissing state law claims under *Colorado River* in favor of resolution of similar issues in pending state cases); *Siler v. Webber*, No. 3:05-cv-341, 2009 U.S. Dist. LEXIS 141471, at *19-20 (E.D. Tenn. Mar. 5, 2009) (not abstaining under *Colorado River* but declining to exercise supplemental jurisdiction over state law claims); *McMahon v. Refresh Dental Mgmt., LLC*, No. 16-170, 2016 U.S. Dist. LEXIS 171875, at *28-30 (W.D. Pa. Dec. 13, 2016) (denying motion to abstain under *Colorado River* but declining to exercise supplemental jurisdiction over state law claims); *Reed-Pratt v. Winfrey*, No. 20-12129, 2020 U.S. Dist. LEXIS 167861, at *2-15 (E.D. Mich. Sep. 9, 2020) (declining to exercise supplemental jurisdiction over state law claims; then evaluating whether to abstain under *Colorado River* on the remaining federal claim). Second, the Court's decision not to exercise supplemental jurisdiction over the 3PC does not negate the Court's duty to exercise federal jurisdiction under *Colorado River*. Where *Colorado River* applies, a court does not entertain any part of the case. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983) ("When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties."). That is not true with the declination of supplemental jurisdiction. Here, the Court will continue to exercise jurisdiction over Fisk's claim as well as WOJV's counterclaim. It is only WOJV's 3PC against the TJPA that will not be adjudicated here, which is of no real consequence given the Consolidated State Action where those claims will be addressed. *Cf. Beck v. Dobrowski*, 559 F.3d 680, 686 (7th Cir. 2009) (concluding that "the judge acted well within his discretion in declining to exercise jurisdiction over the plaintiff's state-law claim[;] [b]ut insofar as the plaintiff based federal jurisdiction over that claim on the district court's supplemental jurisdiction, invocation of the doctrine of *Colorado River* was unnecessary, in view of the presumption that when a federal suit is dismissed before trial the court should relinquish any supplemental state-law claim to the state courts [under § 1367(c)(3)]" – a presumption that "is strengthened when . . . an identical case

12

is already pending in state court and is nearer final resolution than the claim in the federal suit").

### III.     CONCLUSION

For the foregoing reasons, the Court denies WOJV's motion to stay and grants the TJPA's motion to dismiss. The Court expresses no opinion on whether WOJV should be allowed to file an amended pleading, *i.e.*, to assert a more narrowly tailored 3PC against the TJPA.

This order disposes of Docket Nos. 97 and 99.

**IT IS SO ORDERED**.

Dated: January 20, 2021

_____
EDWARD M. CHEN
United States District Judge

13