UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FISK ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>OBAYASHI CORPORATION, et al.,<br><br>Defendants. | Case No. 18-cv-07671-EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**<br><br>Docket No. 137 |

This case relates to the Transbay Transit Center Project. In 2009, the Transbay Joint Powers Authority ("TJPA") entered into a written contract with the Webcor/Obayashi Joint Venture ("WOJV") related to the construction of the Project. Under the contract – hereinafter referred to as the Prime Contract – WOJV was to provide certain pre-construction services, serve as the construction manager/general contractor, and manager/administer subcontracts with trade subcontractors. WOJV subsequently entered into a written contract – hereinafter referred to as the Subcontract – with Fisk Electric Company ("Fisk"), under which Fisk agreed to provide electrical work for the Project.

In the case at bar, Fisk has sued, *inter alia*, the WOJV in federal court, primarily for breach of contract. For example, Fisk asserts that it was not compensated for the extra work that it did on the Project (resulting from, *e.g.*, changes to the work that WOJV made) or even for some of the work that it was originally contracted to do. Fisk also asserts that WOJV failed to complete precedent work necessary to allow Fisk to timely perform its scope of work and that WOJV improperly "de-scoped" portions of the Subcontract and assigned the work to other contractors.

Now pending before the Court is Fisk's motion for leave to file a third amended complaint

("TAC"). Specifically, Fisk seeks to add a claim for damages against the WOJV Defendants[1] based on a violation of a statutory duty. The statute at issue is California Public Contract Code § 4107 which provides, *inter alia*, that a "prime contractor whose bid is accepted may not: (a) Substitute a person as subcontractor in place of the subcontractor listed in the original bid," except where the awarding authority consents to substitution in certain limited circumstances. Cal. Pub. Contract Code § 4107(a). As indicated by this language, the new proposed claim relates to Fisk's existing allegations in the operative second amended complaint ("SAC") that WOJV improperly de-scoped portions of the Subcontract and gave the work to other contractors. *See* SAC ¶ 27(f) (alleging that WOJV Defendants breached the Subcontract by "improperly de-scoping portions of the . . . Subcontract and assigning said work to other contractors in violation of California law").

Having considered the parties' briefs and accompanying submissions as well as the oral argument of counsel, the Court hereby **GRANTS** Fisk's motion.

## I.  DISCUSSION

### A.  Legal Standard

A motion for leave to amend is subject to Federal Rule of Civil Procedure 15. Rule 15 provides in relevant part that a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Factors that a court considers in determining whether to give leave to amend include "undue delay, the movant's bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility." *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020). In the instant case, WOJV simply argues that amendment – *i.e.*, adding a claim for breach of statutory duty – would be futile.

### B.  California Public Code § 4107

As noted above, the statute that is implicated in Fisk's proposed amendment is California Public Contract Code § 4107. Section 4107 provides as follows:

> A prime contractor whose bid is accepted may not:

---

[1] The WOJV Defendants are the WOJV, Webcor Construction L.P., and Obayashi Corporation. Webcor and Obayashi formed the WOJV.

2

(a) Substitute a person as subcontractor in place of the subcontractor listed in the original bid, except that the awarding authority . . . may . . . consent to the substitution of another person as a subcontractor in any of the following situations:

(1) When the subcontractor listed in the bid, after having had a reasonable opportunity to do so, fails or refuses to execute a written contract for the scope of work specified in the subcontractor's bid and at the price specified in the subcontractor's bid, when that written contract . . . is presented to the subcontractor by the prime contractor.

(2) When the listed subcontractor becomes insolvent or the subject of an order for relief in bankruptcy.

(3) When the listed subcontractor fails or refuses to perform his or her subcontract.

(4) When the listed subcontractor fails or refuses to meet the bond requirements of the prime contractor as set forth in Section 4108.

(5) When the prime contractor demonstrates to the awarding authority . . . that the name of the subcontractor was listed as the result of an inadvertent clerical error.

(6) When the listed subcontractor is not licensed pursuant to the Contractors License Law.

(7) When the awarding authority . . . determines that the work performed by the listed subcontractor is substantially unsatisfactory and not in substantial accordance with the plans and specifications, or that the subcontractor is substantially delaying or disrupting the progress of the work.

(8) When the listed subcontractor is ineligible to work on a public works project pursuant to Section 1777.1 or 1777.7 of the Labor Code.

(9) When the awarding authority determines that a listed subcontractor is not a responsible contractor.

Prior to approval of the prime contractor's request for the substitution, the awarding authority, or its duly authorized officer, shall give notice in writing to the listed subcontractor of the prime contractor's request to substitute and of the reasons for the request.  The notice shall be served by certified or registered mail to the last known address of the subcontractor.  The listed subcontractor who has been so notified has five working days within which to submit written objections to the substitution to the awarding authority.  Failure to file these written objections constitutes the listed subcontractor's consent to the substitution.

If written objections are filed, the awarding authority shall give notice in writing of at least five working days to the listed

>> subcontractor of a hearing by the awarding authority on the prime contractor's request for substitution.
>
> (b) Permit a subcontract to be voluntarily assigned or transferred or allow it to be performed by anyone other than the original subcontractor listed in the original bid, without the consent of the awarding authority . . . .
>
> (c) Other than in the performance of "change orders" causing changes or deviations from the original contract, sublet or subcontract any portion of the work in excess of one-half of 1 percent of the prime contractor's total bid as to which his or her original bid did not designate a subcontractor.

Cal. Pub. Contract Code § 4107.

In *Southern California Acoustics Co. v. C.V. Holder, Inc.*, 71 Cal. 2d 719 (1969), the California Supreme Court commented on the legislative history of § 4107. It noted that, before the Subletting and Subcontracting Fair Practices Act was adopted in 1963, "it was settled that the Government Code sections governing subcontracting, which the act superseded, conferred no rights on subcontractors." *Id.* at 724. The Government Code sections at issue were designed "to provide an opportunity to the awarding authority to investigate and approve the initial subcontractors and any proposed substitutions." *Id.* at 725.

> The amendments made by the 1963 Subletting and Subcontracting Fair Practices Act stated the purposes of the statute in a preamble (§ 4101) and completely revised the section dealing with substitution of subcontractors, renumbering it section 4107. The purpose of the amended statute is not limited . . . to providing the awarding authority with an opportunity to approve substitute subcontractors. Its purpose is also to protect the public and subcontractors from the evils attendant upon the practices of bid shopping and bid peddling subsequent to the award of the prime contract for a public facility.[2]

---

[2] California Public Contract Code § 4101 provides:

> The Legislature finds that the practices of bid shopping and bid peddling in connection with the construction, alteration, and repair of public improvements often result in poor quality of material and workmanship to the detriment of the public, deprive the public of the full benefits of fair competition among prime contractors and subcontractors, and lead to insolvencies, loss of wages to employees, and other evils.

Cal. Pub. Contract Code § 4101.

> Bid shopping is the use of the low bid already received by the general contractor to pressure other subcontractors into submitting

4

> Thus section 4107 now clearly limits the right of the prime contractor to make substitutions and the discretion of the awarding authority to consent to substitutions to those situations listed in subdivision (a), all of which are keyed to the unwillingness or inability of the listed subcontractor properly to perform. Unless a listed subcontractor "becomes insolvent or fails or refuses to perform a written contract for the work or fails or refuses to meet the bond requirements of the prime contractor," the prime contractor may not substitute another subcontractor for the listed subcontractor and the awarding authority may not consent to such a substitution until the contract is presented to the listed subcontractor and he, after having had a reasonable opportunity to do so, fails or refuses to execute the written contract.

*Id.* at 725-27. Notably, the right of a subcontractor "to perform the subcontract unless statutory grounds for a valid substitution exist . . . may be enforced by an action for damages against the prime contractor to recover the benefit of the bargain the listed subcontractor would have realized had he not wrongfully been deprived of the subcontract." *Id.* at 727.

C.  Futility

The WOJV Defendants argue that adding a claim based on § 4107 would be futile, and thus amendment should not be permitted. According to the WOJV Defendants, the newly asserted claim is futile for two reasons: (1) the purpose of § 4107 is to protect the public and subcontractors from bid shopping and bid peddling, but neither bid shopping nor bid peddling is implicated based on the allegations made in the proposed TAC[3]; and (2) substitution for purposes of § 4107 means

---

> even lower bids. Bid peddling, conversely, is an attempt by a subcontractor to undercut known bids already submitted to the general contractor in order to procure the job. The statute is designed to prevent only bid shopping and peddling that takes place after the award of the prime contract. The underlying reasons are clear. Subsequent to the award of the prime contract at a set price, the prime contractor may seek to drive down his own cost, and concomitantly increase his profit, by soliciting bids lower than those used in computing his prime bid. When successful this practice places a profit squeeze on subcontractors, impairing their incentive and ability to perform to their best, and possibly precipitating bankruptcy in a weak subcontracting firm. Bid peddling and shopping prior to the award of the prime contract foster the same evils, but at least have the effect of passing the reduced costs on to the public in the form of lower prime contract bids.

*S. Cal. Acoustics Co.*, 71 Cal. 2d at 726 n.7.

[3] At the hearing, Fisk suggested for the first time that there was bid shopping or peddling situation here because significant portions of its work were taken away before quality of its performance

5

that a subcontractor has been terminated, removed, and replaced by another, and that did not happen in this case – specifically, "[a]lthough Fisk was put on notice of its default under the terms of its subcontract agreement, WOJV did not terminate Fisk's subcontract and Fisk completed its work on the Project." Opp'n at 3. The WOJV Defendants maintain:

> While the Legislature expressed its concern with and provided a statutory scheme to protect against bid shopping and bid peddling, it did not intend for the Listing Laws to stand in the place of standard default and mitigation provisions within construction contracts. Instead, the Listing Laws provide a process, including an administrative hearing, to subcontractors whose defaults have le[d] to a termination of their subcontracts and who are being replaced by another on the project to finish their scopes of work.

Opp'n at 4.

Neither of the WOJV Defendants' arguments is persuasive. With respect to the argument in (1), even though prevention of bid shopping and bid peddling may have been the reason behind enactment of, *inter alia*, § 4107, that does not mean that the statute kicks in only when there is bid shopping or bid peddling. The text of § 4107 is not so limited, and no case has so held.

The argument in (2), therefore, is the WOJV Defendants' main contention. Although the WOJV Defendants' position is not without any merit, the Court is not persuaded. To be sure, inherent in substitution is some kind of termination – *i.e.*, substitution requires replacement of a subcontractor with another at least as to some aspect of the work. However, nothing on the face of the statute requires that a subcontractor be formally terminated or completely removed from a project before the protections of § 4107 are triggered. Even if a subcontractor is not fired from a project, it would be fair to say that the subcontractor has been "substituted" and effectively constructively terminated – at least in part – if a substantial portion of the work that it was contracted to do is taken away from it and given to another subcontractor.

As Fisk points out, *R.J. Land & Associations Construction Co. v. Kiewit-Shea*, 69 Cal. App. 4th 416 (1999), supports its position that a subcontractor can rely on § 4107 even if it has not been entirely kicked off a project. In *R.J.*, the Metropolitan Transportation Authority ("MTA")

---

ever became an issue.

invited bids for construction of a subway station in Los Angeles. "Among the categories of work in MTA's plans and specifications were the following: (1) concrete unit masonry . . . ; (2) precast concrete . . . ; and (3) precast glass paver panels." *Id.* at 421-22. The defendant-joint venture prepared a bid in which it listed the plaintiff-subcontractor as a subcontractor for concrete unit masonry and precast glass paver panels. *See id.* at 422. However, before actually submitting its bid, the defendant received a proposal from another subcontractor for, *inter alia*, the glass paver panel work at a cheaper price. The defendant thus modified its bid with the intent of using the new subcontractor for the glass paver panel work. However, in modifying the bid, the defendant made a mistake: (1) it stated that the new subcontractor would be doing the precast concrete work, not the glass paver panel work; and (2) it continued to list the plaintiff as the subcontractor for both concrete unit masonry *and* precast glass paver panels. The defendant failed to correct the clerical error within the timeframe provided for by statute. *See id.* at 422-23.

The MTA subsequently accepted the defendant's bid, and the defendant thereafter entered into an agreement with the plaintiff under which the plaintiff would do only the concrete unit masonry work. The plaintiff performed under that contract and was fully paid for its work. The plaintiff, however, filed suit because it had been listed in the bid as the subcontractor for the glass paver panel work but was not given that subcontract. *See id.* at 423.

The appellate court ultimately sided with the plaintiff. "The factors cited by [the defendant] show only that [the defendant] *intended* the listing for [the other subcontractor] to be for glass paver panels. [The defendant's] *intention* is not sufficient to defeat [the plaintiff's] statutory cause of action." *Id.* at 426 (emphasis in original). Nowhere did the court suggest that the plaintiff did not have a § 4107 claim because it had not been entirely kicked off the project.

At the hearing, the WOJV Defendants protested that the state legislature could not have intended that, under § 4107, the consent of the awarding authority and the due process-type hearing mandated by the statute would be required every time a minor substitution were made – *e.g.*, if a subcontractor was hired to do electrical work and failed to clean up its work area (with such cleanup being required under the subcontract), thus requiring the prime contractor to hire another entity to clean up. There is a reasonable argument that § 4107 should be interpreted to

7

require a more formal or substantial substitution before the processes specified in the statue are triggered. On the other hand, Fisk also has a reasonable argument that the state legislature could not have meant that a significant de facto substitution would not trigger application of § 4107. Indeed, under the WOJV Defendants' interpretation, § 4107 would not be triggered even if a prime contractor were to give away 90% of the subcontractor's work to another entity (*i.e.*, leaving the subcontractor with only 10% of the work); this would make it all too easy for a prime contractor to entirely evade the protections given to subcontractors under § 4107.

For purposes of the pending motion, the Court need not define with any precision what would constitute a substitution sufficient to implicate § 4107. The interpretation and application of this section should not be made in a vacuum without a factual context. At this juncture, the Court need only make clear that, for the reasons stated above, it is rejecting the WOJV Defendants' position that a complete and formal removal of the subcontractor from the project is required before § 4107 is triggered.

## II. CONCLUSION

For the foregoing reasons, the Court hereby grants Fisk's motion for leave to amend. Fisk shall immediately file its proposed amended complaint. Although the Court is granting Fisk's motion, it is not, at this juncture, permitting Fisk to move forward with a motion for summary judgment or summary adjudication on the statutory claim. The fact that Fisk has, at this juncture, what appears to be a nonfutile statutory claim is enough for the parties to continue with their settlement discussions. Moreover, based on the representations made at the hearing, it is not clear to the Court that the statutory claim would be amenable to summary judgment. Absent leave of the Court, Fisk shall not file a motion for summary judgment or summary adjudication.

This order disposes of Docket No. 137.

**IT IS SO ORDERED**.

Dated: April 7, 2023

_____
EDWARD M. CHEN
United States District Judge